(Pleito No. 170.—Fallado en Febrero 5 de 1902.)

## Morey contra Balseiro.

Recurso contra sentencia dictada por la Corte de Distrito de Arecibo.

1.—Interdicto de recobrar. En la demanda para recobrar ó retener, deberá el demandante probar que se hallaba en la posesión ó en la tenencia de la cosa y que ha sido inquietado ó perturbado en ella por el demandado.

2.—Recurso. En los recursos de casación fundados en el No. 7 del artículo 1,690 de la Ley de Enjuiciamiento Civil, es necesario precisar si el error alegado es de hecho ó de derecho; si de hecho, debe resultar de documentos ó autos auténticos que demuestren la equivocación del juzgador; si de derecho, debe determinarse la regla de sana crítica y la ley ó doctrina legal que la admite, así como el concepto en que se ha cometido la infracción.

### SENTENCIA.

En la Ciudad de San Juan Bautista de Puerto Rico, á los cinco días del mes de Febrero de mil novecientos dos.— Vistos estos autos de interdicto de recobrar promovidos en la Corte de Arecibo, por Don Antonio Morey y Rotger, propietario y comerciante, vecino de esta Ciudad, representado por el Abogado Don Rafael López Landrón, contra Don Rafael Balseiro, por sí y como gestor de la Sociedad Agrícola Balseiro y Georgetti, á quien representa el Abogado Don Herminio Díaz, venidos á este Tribunal, á virtud de recurso de casación por infracción de ley, interpuesto por el demandante; y.—Resultando: Que en veinte y cuatro de Febrero del año mil ochocientos noventa y siete, ante el Notario Don Francisco I. Náter, comparecieron, de una parte, Don Bonocio Llenza y Gago, en concepto de apoderado de Doña Joaquina Gago y Jiménez, y de la otra, Don Antonio Morey y Rotger, y el primero con el carácter expresado otorgó al segundo escritura de venta de una finca rústica, sin nombre, situada en el barrio del Pueblo, término de Barceloneta, con cabida de setenta y dos cuerdas cuarenta y siete centavos de otra, de bajura, que lindaba anteriormente por el Norte con el caño Tiburones y terrenos de Don Edmundo Pavensted y de la sucesión de Don Antonio Cayol, por el Sur, con tierras antes de Don Bonocio Llenza, hoy de Don Antonio Morey; por el Saliente con el expresado caño, terrenos de Don José Agustín de la Torre, de la Sucesión Cayol y del referido Pavensted, y por el Poniente, con terrenos del mismo Pavensted.—Resultando: Que con testimonio de esa escritura debidamente inscrita en el Registro de la Propiedad, acudió el comprador Morey, en escrito fecha cuatro de Junio de mil novecientos, interponiendo demanda

de interdicto de recobrar la posesión de siete cuerdas de terreno, sentando como hechos, el haber adquirido la finca descrita en el anterior resultando, y en que, antes de hacer la compra de dicha finca, se procedió á practicar la mensura de su cabida, puntos y linderos, con citación y asistencia de colindantes, y entre ellos, de Don Eduardo Georgetti, sin que éste ni nadie hiciera oposición al referido acto, haciéndose insertar ese deslinde en la escritura de venta; que desde la adquisición, hacía tres años, el actor Morey venía en posesión de la tenencia material, sosegada y pacífica, sin disputa de nadie, de toda la finca relacionada; pero que dentro del último año, hacía dos meses próximamente, Don Rafael Balseiro, uno de los gestores de Balseiro y Georgetti, valiéndose de sus mayordomos y braceros, comenzó á introducirse en el perímetro de la expresada finca, llegando á ocupar una porción de siete cuerdas más ó menos de su cabida, practicando trabajos de labranza y siembras, perturbando así el laboreo del legítimo dueño ó poseedor; que quiso el Morey evitar encuentros litigiosos con su convecino, pero en vano, porque si bien se intentó extrajudicialmente aclarar el derecho inconcuso de aquél, no se llegó á ningún resultado legal y suplicó que, previos los trámites de ley, se dictase sentencia condenando á la sociedad demandada á que inmediatamente repusiera al actor en la posesión íntegra y total del predio rústico de referencia, y requerirla para que en lo sucesivo se abstuviera de cometer tales actos, bajo el apercibimiento correspondiente en derecho, con las costas al demandado, así como á la indemnización de daños y perjuicios, y devolución de frutos que hubiere percibido, sin perjuicio de tercero, y reservando á las partes el derecho sobre propiedad ó posesión definitiva.—Resultando: Que admitida la demanda, se mandó oir la información ofrecida, resultando de ella, que los testigos Guillermo Carrión, Marcelino de Jesús, Gregorio Kortrich, Lino Rosado López, Don Juan Torres y Doña Concepción Boya, declaran ser ciertos los hechos expuestos en la demanda.—Resultando: Que en vista del resultado de la

informacion practicada, se dispuso citar las partes á juicio verbal, en cuyo estado, se promovió por los demandados cuestión de competencia, resolviéndose por el Tribunal Supremo que el conocimiento del asunto correspondía al Tribunal de Arecibo, y se señaló nuevamente día para el acto verbal, á cuyo acto concurrieron las partes, reproduciendo el actor en dicho acto los hechos y alegaciones de la demanda, solicitando el letrado de la parte demandada se desestimase, con costas, la demanda, fundándose en que á Doña Catalina Juliá y á Doña Josefa Cayol les correspondían de proindiviso una finca rústica denominada Plazuela situada en el barrio del pueblo de Barceloneta, compuesta de dos cuerpos, siendo uno de noventa y siete cuerdas noventa y un centavos, y el otro de noventa y una con ochenta y cuatro, con las colindancias siguientes: El primero por el Norte con Don Edmundo Pavensted, Don José A. de la Torre, antes, y después Don Bonocio Llenza, Don Francisco de P. Vals, Doña Joaquina Llenza de Díaz y el Ayuntamiento de Barceloneta; por el Sud Doña Obdulia Padilla, Doña Catalina Juliá, Doña Josefa Cayol, antes, hoy Don Félix Almiroty, Don Bonocio Llenza y Doña Catalina Juliá; por el Este Doña Catalina Juliá y Doña Josefa Cayol, antes, hoy Don Félix Almiroty, el referido Llenza y la expresada Juliá, antes, hoy Don Antonio Morey, la indicada Llenza Díaz, el repetido Ayuntamiento, Don José Antonio Acevedo y la sucesión de Don Domingo Negrón; y al Oeste la repetida Sra. Juliá, Don Edmundo Pavensted, Don Francisco de Paula Vals, Don José Agustín de la Torre, antes, hoy Don Bonocio Llenza y el citado Ayuntamiento; siendo las del otro cuerpo por el Norte y Este el caño Tiburones, por el Sud Edmundo Pavensted y Don José Agustín de la Torre, hoy Don Bonocio Llenza, y por el Oeste con la hacienda Pajas de Don Cornelio Kortrich; que esa finca, según escritura de catorce de Enero de mil ochocientos ochenta y nueve, otorgada ante el Notario Náter, la arrendaron las Sras. Juliá y Cayol á Don Eduardo Georgetti por siete años inscri-

biéndose el arriendo en el Registro y entregando dichas señoras las fincas á Georgetti por medio de un plano y certificación de mensuras practicadas por el agrimensor Don Eladio María Izquierdo; que de la parte Norte de esa finca ó Noroeste hay una prolongación ó especie de península, unida al cuerpo principal, pero determinando su forma un pequeño caño y siendo su extensión de cinco á seis cuerdas poco más ó menos, colindante al Norte con Don Edmundo Pavensted, por el Sud con Don Bonocio Llenza, y por el Oeste con el camino llamado Puente Grande ó sea un gran zanjón que surtía con las aguas del caño Tiburones el uso y servidumbres de las fábricas de la hacienda Plazuela; que entre ese zanjón, el caño Tiburones y el cañito ya mencionado, está comprendido en forma triangular la península ó pedazo de terreno ya dicho; que Don Bonocio Llenza, colindante con Plazuela por ese lado, al arrendar á Balseiro y Georgetti esta última finca, le propuso un canje á uso y servidumbre nada más del mencionado pedazo de terreno, por otro pedazo que queda al Sud de Plazuela, habiéndose aceptado dicho canje; que compraron Balseiro y Georgetti la hacienda Plazuela con el mismo plano que arrendaron y habiendo muerto Llenza y habiendo heredado sus menores nietos, hijos de Don Francisco Vals, la parte de terreno que aquél había dado á Balseiro en canje, la tutora de esos menores confirmó en mil ochocientos noventa y dos en documento privado, dicho canje; que ese canje continuó en vigor hasta primero de Septiembre de mil ochocientos noventa y siete, en que muerta la expresada señora y siendo tutora la misma Doña Josefa Gago, se otorgó por ésta un documento en virtud del cual Balseiro y Georgetti se comprometieron á abonar y abonaron á los menores siete pesos mensuales, en vez del uso de las cinco y media cuerdas, las que volvieron de nuevo á la posesión y propiedad de Balseiro y Georgetti, sin que en todo ese tiempo haya poseído jamás Morey esas cuerdas; que junto á la hacienda Plazuela y colindando con ella, tenía Don José A. de la

Torre una finca rústica sin nombre de la que careciendo
de título inscribible, hizo instruir y fué aprobado inscri-
biéndose en el Registro un posesorio, en que consta que
dicha finca radica en Barceloneta, barrio del Pueblo, con
extensión de setenta y dos cuerdas cuarenta y siete céntimos
con las colindancias que expresa; que inscrito ese expe-
diente mucho antes de la mensura de la Sra. Gago, ó sea en
dos de Junio de mil ochocientos ochenta y ocho, para deter-
minar de un modo exacto el perímetro y linderos de la
expresada finca, se hizo mensurar por el Agrimensor del
Gobierno Don Cornelio Ruiz, y habiendo este practicado la
operación, libró certificación de ella, resultando que el inmue-
ble tenía setenta y dos cuerdas, cuarenta y siete céntimos;
que esa finca así mensurada pasó á ser de Don Bonocio
Llenza, por virtud de permuta con el Sr. de la Torre, según
escritura de tres de Julio de mil ochocientos ochenta y ocho,
inscrita en el Registro de la Propiedad; que muerto el Sr.
Llenza, en las divisorias de su caudal se protocolizaron en la
Notaría de Manatí, el ocho de Julio de mil ochocientos
noventa y dos, adjudicándose en pago de gananciales á Doña
Joaquina Gago, la antedicha finca con la propia extensión y
con idénticas colindancias que la adquirió Llenza; que en
ocho de Febrero de mil ochocientos noventa y seis, hipotecó
dicha señora á Don Antonio Morey, la expresada finca con
las mismas colindancias, y después vendió al mismo con la
particularidad de que al venderle varió las colindancias; que
alterados así caprichosamente los linderos de la finca que
fué del Sr. Latorre, y hoy de Morey, se introdujo éste á
principios de mil novecientos por la parte Norte de la misma,
y por primera y última vez en el pedazo de tierra referido
tuvo el usufructo Llenza, y que es hoy de la propiedad y ha
estado poseído por Balseiro y Georgetti, los que inmediata-
mente ordenaron á su mayordomo hiciera desalojar lo inva-
dido indebidamente por Morey, respetando éste la orden de
Balseiro y Georgetti y saliendo de allí para someter la cues-
tión á amigables componedores para que dijesen, no de

quién era la posesión de terreno que nunca ha disfrutado
Morey, sino á quién pertenecía la propiedad del mismo
y, habiendo aceptado Balseiro y Georgetti, se otorgó la
correspondiente escritura de compromiso, el dos de Marzo
de mil novecientos, ante el Notario Guerra, nombrándose
amigables; que en funciones éstos nombraron peritos, con el
fin de que teniendo éstos á la vista planos y demás antece-
dentes, hiciesen un estudio sobre el terreno y les ilustrasen
sobre la cuestión debatida; que aceptado por dichos peritos
el encargo, no estuvieron conformes en su dictamen, dándolo
uno á favor de Morey y el otro á favor de Balseiro y Geor-
getti, y entonces los amigables nombraron un tercer perito y
éste estuvo conforme con el dictamen del que lo habia dado
á favor de Balseiro y Georgetti; que en vista de esto los
amigables componedores Egozcue y Palmer, pronunciaron
veredicto en favor de Balseiro y Georgetti, negándose Lan-
drón y Monserrat, que fueron designados por Morey, á firmar
el veredicto, alegando que se había pronunciado fuera de
tiempo; que en vista de esto, Balseiro y Georgetti, acudieron
al Tribunal del Distrito de San Juan para que se requiriese á
los expresados señores, para que al día siguiente del reque-
rimiento firmasen el laudo, y habiéndose opuesto á ello di-
chos señores, se halla en tramitación ese expediente; que así
las cosas y sin haberse aún decidido con carácter de firme el
mencionado expediente, acude Morey al Tribunal estable-
ciendo este interdicto; replicando el actor negando los hechos
de la contestación á la demanda y presentó una copia simple
de la escritura de compra-venta de finca, otorgada en veinte
y cuatro de Febrero de mil ochocientos noventa y siete y
que en testimonio autorizado acompañó con la demanda,
otra copia simple de un acta notarial otorgada en Manatí, en
nueve de Mayo de mil novecientos, en que se hace constar
por el Notario que Esteban Dávila, Sotero Hernández, José
Caballero, Ramón Larregui, Guillermo Carrión, Ceferino
Ruiz, Juan Torres, Concepción Borjas, Marcelino Acosta,
Gervasio Colón, Marcelino de Jesús, Gregorio Kortrich y

Félix Boya, declaran que les consta que Morey es dueño desde hacía tres años de un predio rústico, radicado en Barceloneta, por compra á Doña Joaquina Lago, que practicó mensura con asistencia de Georgetti y que siempre Morey ha poseído esos terrenos, sin que fuera interrumpido por nadie; que Everardo Vargas tuvo que cortar unas cañas antes de estar maduras para hacer entrega á Morey de dichos terrenos; que cuando la mensura, se hizo, por indicación de Georgetti, una zanja en terrenos de Morey; que Balseiro y Georgetti, ó sean los dueños de la hacienda "Plazuela," araron y zanjaron el terreno que les pertenecía, respetando el entregado á Morey, que la guardarraya fué sembrada de palmas de coco por Morey, admitiéndose esa acta por el Tribunal como prueba testifical; copia de una carta dirigida por Evaristo Camacho á Morey, en Febrero de mil novecientos, manifestándole que Balseiro había puesto á arar en los terrenos de Morey, y que al requerirlo para que cesara ese trabajo, contestó que lo hacía porque no quería perder esos terrrenos; otra copia simple de una carta dirigida en nueve de Marzo de mil novecientos por Don Bonocio Llenza á Don José Rivera, de Manatí, en la que comunica el firmante que al hacerse la mensura de los terrenos que Morey había adquirido de la madre del firmante había asistido á ella Don Eduardo Georgetti. Presentó también certificación expedida por el Agrimensor Don Manuel Martínez Mora descriptiva de una porción de terreno radicado en el barrio del pueblo de Barceloneta, practicada en trece de Febrero de mil ochocientos noventa y siete, otra certificación del propio agrimensor expedida en veinte y seis de Febrero de mil novecientos á la que se acompaña un plano y en cuya certificación manifiesta dicho agrimensor no haber encontrado diferencia alguna en posición y distancias á que se contrae su certificación de trece de Febrero de mil ochocientos noventa y siete, pero que al extremo Nordeste del perímetro ocupado por una porción de cinco cuerdas setenta y ocho céntimos, el colindante Don Rafael Balseiro, le manifestó que no permitía

el replanteo allí por considerar que la parte del predio que abraza la mensura que tiene setenta y dos cuerdas cuarenta y dos céntimos, radica en terrenos de su propiedad.—Resultando: De la prueba testifical del actor que el testigo Don Evaristo Camacho reconoce como suya una carta de fecha Febrero de mil novecientos, y repreguntado este testigo á instancia de la parte demandada, confesó que en el acto de declarar devenga sueldo del Sr. Morey. El testigo Don Antonio Anexy declara constarle que la mensura y deslinde practicados por Don Manuel Martínez Mora en trece de Febrero de mil ochocientos noventa y siete se llevó á cabo con la conformidad é intervención de Don Eduardo Georgetti, gestor de Balseiro y Georgetti; que su señora madre vendió á Balseiro y Georgetti la hacienda Plazuela sin sujeción á mensura, previo deslinde, y que le consta por haber intervenido en la entrega de la hacienda, y repreguntado manifestó: que no es el apoderado de la sucesión Cayol, pero no obstante intervino en el arrendamiento y venta de la hacienda Plazuela, porque el hermano del declarante, Don Jaime, no hacía nada sin consultarle y que tenía conocimiento de la carta escrita por Don Jaime el catorce de Febrero de mil novecientos, dirigida á Don Rafael Balseiro, en cuya carta tratándose de este asunto dice: "que siente que Morey no se haya dado por satisfecho con las declaraciones que le ha hecho, teniendo delante el plano de la finca que era la mejor autoridad en el asunto." Don Bonocio Llenza reconoció como cierto el contenido de la carta que en nueve de Marzo.dirigiera á Don José Rivera. El testigo Don Everardo Vargas dice que estuvo sembrando caña por cuenta de Don Bonocio Llenza en el terreno objeto de este juicio y tuvo que cortarla tierna para dejar á Morey expedita la posesión. El testigo Don Manuel Martínez Mora reconoció como suya la firma de la certificación de la descripción y plano presentado de la finca por el actor, declaró ser cierto el contenido de las que en copia acompañó el actor con los números uno y dos. También declararon

los testigos Esteban Dávila, Sotero Hernández, José Caballero, Ramón Larregui, Guillermo Carrión, Juan Dones Concepción Borges, Marcelino Acosta, Gervasio Colón, Gregorio Kortrich y Félix Borges, resultando de su declaración que todos se ratifican en el contenido del acta notarial de nueve de Marzo de mil novecientos otorgada en Manatí; declaran, en resumen, que la posesión del terreno la tenía Morey, expresando unos que lo saben por haber trabajado en ellos antes de la guerra, y otros por haber asistido á la mensura y construcción de la zanja, y repreguntados algunos, no han podido explicar lo que es acto de posesión, ni cuando tuvo lugar el hecho de la perturbación en la posesión de Morey.—Resultando: Que á instancia del actor se trajo certificación del Registro de la Propiedad expresiva de haberse inscrito al folio doscientos treinta y siete vuelto, del tomo noveno de Barceloneta, finca ciento sesenta duplicado, inscripción doce, á favor de Don Antonio Morey, la propiedad de la finca que adquirió por escritura de veinte y cuatro de Febrero de mil ochocientos noventa y siete de Doña Joaquina Gago.—Resultando: Que Don Eduardo Georgetti absolviendo posiciones manifestó ser cierto era gestor de Balseiro y Georgetti, negando las demás preguntas formuladas por el actor.—Resultando: De la prueba del demandado: que presentó un testimonio por exhibición de la certificación que expidiera el agrimensor del Gobierno Don Cornelio Ruiz en dos de Junio de mil ochocientos ochenta y ocho, en la cual dicho funcionario hace constar haber sido llamado por Don José A. de la Torre para medir una porción de terreno de siete cuerdas que le compró á la sucesión de Doña Antonia Cayol junto con otra de sesenta y cinco, cuarenta y siete, resultó que la expresada finca tenía setenta y dos cuerdas cuarenta y siete céntimos. —El Notario Don Mauricio Guerra libró testimonio de la escritura otorgada ante él el dos de Marzo de mil novecientos por la cual Don Antonio Morey y Don Rafael Balseiro, como gestor de Balseiro y Georgetti, se comprometieron á someter

á la decisión de amigables componedores la cuestión que tenían pendiente sobre el terreno origen de este juicio y nombrando de amigables componedores á Don Manuel Egozcue, Don Jaime Sifre, Don Rafael López Landrón, Don Damián Monserrat y Don Santiago R. Palmer, para que resolvieran á quien pertenecía el terreno disputado ; el mismo Notario expidió copia de la escritura otorgada ante él el veinte y ocho de Abril de dicho año mil novecientos, por la cual los Sres. Morey y Balseiro prorrogan hasta el día último del mes de Mayo de dicho año el plazo señalado para que los jueces árbitros dicten sentencia.—Resultando: Que también presentó tres certificaciones periciales expedidas por los agrimensores Don Manuel Martínez Mora, Don Eladio María Izquierdo y Don Antolín Nin, de las cuales aparece que el primero expresa que la porción de cinco cuerdas, setenta y ocho céntimos, que se discute, está comprendida é involucrada en cada uno de los títulos de Morey y Balseiro y Georgetti ; el segundo aprecia que las cuerdas disputadas pertenecen á Balseiro y el perito tercero, ó sea Nin, expresa que las cinco cuerdas sesenta y ocho céntimos que el Sr. Balseiro impidió mensurara el Sr. Martínez Mora, no deben considerarse como formando parte de las setenta y dos cuerdas cuarenta y siete céntimos pertenecientes á Morey, reconociendo dichos tres peritos las respectivas firmas que autorizan dichas certificaciones.—Resultando : Que á instancia del demandado certificó el Registrador las inscripciones de la hacienda "Plazuela," así como de las setenta y dos cuerdas cuarenta y siete céntimos pertenecientes al actor, apareciendo de ésta que según la inscripción primera colindaba por el Norte con el caño Tiburones y terrenos de Don Edmundo Pavensted y sucesión de Don Antonio Cayol ó sea su viuda Doña Antonia Cayol y su hija Doña Catalina Juliá, al Sud, tierras de Don Bonocio Llenza, al Saliente con el expresado caño y terrenos de Don José A. de la Torre, Sucesión Cayol y el citado Pavensted, y al Poniente con tierras del Pavensted, inscrita á nombre de Don José A. de

la Torre por expediente posesorio inscrito el diez y ocho de
Enero de mil ochocientos ochenta y nueve; que dicha finca
la trasmitió el la Torre á Don Bonocio Llenza en permuta
con una urbana con derecho de hipoteca sobre aquélla
á'favor del la Torre; que dicha finca por muerte de Llenza
fué adjudicada á su esposa Doña Joaquina Gago como mitad
de gananciales, inscribiéndose á su favor en veinte y ocho de
Septiembre de mil ochocientos noventa y tres; que en las
inscripciones posteriores de la finca, hasta la octava, aparece
con las mismas colindancias expresadas en la primera, hasta
la novena, expresiva de la constitución de una hipoteca
á favor de Morey, en que se diferencia tan sólo en que la
colindancia Sud se expresa ser con Don Antonio Morey,
inscribiéndose por último dicha finca á favor del actor.—
Resultando:   Que también se presentaron por los demanda-
dos dos documentos privados, uno de fecha cuatro de Mayo
de mil ochocientos noventa y dos en el cual Doña Josefa
Tarragona hace constar que Don Bonocio Llenza permutó
hace tiempo con Georgetti Hermanos el uso de un pedazo de
terreno de su propiedad por otro de la hacienda "Plazuela"
arrendada por Georgetti Hermanos; que por fallecimiento
de Llenza pasó aquel terreno á sus menores hijos y que como
tutora y curadora de aquéllos ratifica dicho contrato de
permuta por término de tres años; y otro documento privado
derivado del que se deja relacionado, otorgado en primero
de Septiembre de mil ochocientos noventa y siete, ratificando
aquél, cuyos documentos fueron reconocidos por los inte-
resados y testigos que lo suscriben, agregando además
los cuatro testigos que en el pedazo de terreno en cues-
tión han estado cerca de dos años, como parte de la
hacienda Plazuela, practicando actos como dueños los Sres.
Balseiro y Georgetti; que dicho terreno está sembrado
de cañas por Balseiro y Georgetti como de nueve á diez
meses, que.en dicho terreno se introdujeron un día peones
de Morey queriendo ararlo, por lo que fueron expulsados de
allí sin que hayan vuelto á introducirse.   Los testigos Don

Santiago R. Palmer, Don Jaime Sifre y Don Manuel Egozcue declaran ser exacto el contenido del acta notarial de cinco de Junio de mil novecientos en que se relaciona todo lo ocurrido respecto á los amigables componedores á que sometieron las partes la decisión de la propiedad del terreno.—Resultando: Que el Secretario del Tribunal de San Juan certificó encontrarse en tramitación el incidente promovido por don Rafael Balseiro contra Don Rafael López Landrón y Don Damián Monserrat sobre firma de un laudo de amigables componedores, encontrándose pendiente de la práctica de las pruebas propuestas.—Resultando: Que el demandante, absolviendo posiciones, confiesa ser exacto el hecho quinto de la demanda, que el sentido que indica ese hecho no es otro sino que el declarante al someter á amigables componedores las diferencias con Georgetti surgidas y la cuestion que en este interdicto se ventila, quiso evitar litigios judiciales; que las palabras "no se llegó á ningún resultado legal," con que termina el referido hecho quinto, se refieren á que alegándose por Landrón y Monserrat que la sentencia de amigables componedores se había dictado fuera de tiempo, se negaron á firmar.—Resultando: Que dictada sentencia por el Tribunal de Arecibo en catorce de Mayo de mil novecientos uno, declarando no haber lugar al interdicto de recobrar la posesión de los terrenos, con las costas al actor, se interpuso por el Letrado Don Rafael López Landrón recurso de casación por infracción de ley, autorizado por los números 1º y 7º del artículo 1,690 de la Ley de Enjuiciamiento Civil, citando como infringidos:—1º Por contravención á los artículos 438 del Código Civil en cuanto que la sentencia desconoce que Don Antonio Morey adquirió, por ocupación material, la posesión en Febrero de mil ochocientos noventa y siete.—2º La del artículo 436 del mismo Código, porque sin prueba contraria, precisa y categórica en sus fechas, no se declara por presunción, á lo menos, que Don Antonio Morey siguió disfrutando, después de mil ochocientos noventa y siete hasta que fué perturbado en mil novecientos.—3º Por

aplicación indebida del artículo 436 del Código Civil, que
cita como doctrina el décimo considerando, por cuanto esta-
blece la presunción probatoria de ese artículo á favor de
Balseiro y Georgetti cuya tenencia es posterior y reciente
á la de Morey.—4º Contravención al artículo 446, porque
siendo poseedor el Sr. Morey desde Febrero de mil ochocien-
tos noventa y siete hasta mil novecientos en que se introducen
en el predio Balseiro y Georgetti por su sola autoridad y sin
acudir á los medios legales, no se le ampara y repone en la
posesión como tenedor perturbado.—5º Infracción del
artículo 460 del Código Civil en su número 4º, porque
no habiendo acreditado los demandados que su posesión
reciente, posterior á la de Morey, hubiese durado más de un
año, se tiene sin embargo como poseedor actual á Balseiro y
Georgetti.—6º Infracción del artículo 459 del mismo Código,
porque no habiendo perdido Morey la posesión actual por
no haber transcurrido más de un año de la intrusión de
Balseiro y Georgetti en mil novecientos hasta el día de la
interposición de la demanda, no se reconoce al demandante
su calidad de poseedor actual.—7º En la del artículo 451,
inciso 1º y 455 del Código, porque al poseedor de buena fe,
Morey, cuya posesión no ha sido legalmente interrumpida,
no se le declaran de su propiedad los frutos percibidos,
mientras que se le mandan á abonar á Balseiro y Georgetti,
poseedores de mala fe; aplicación indebida del artículo 1,214
del mismo Código, en cuanto se supone que Don Antonio
Morey no ha probado los hechos que alegó.—8º Error en la
apreciación de las pruebas de mensura y replanteo ó rectifi-
cación, ó sea de las certificaciones de apeo y deslinde y com-
probación posterior llevados á cabo por el Agrimensor Don
Manuel Martínez Mora, puesto que siendo documentos públi-
cos tales antecedentes á tenor de los artículos 1,216 del Código
Civil y 895 número 3º de la Ley de Enjuiciamiento Civil, no
se les reconoce la fuerza probatoria contra tercero que les asigna
el párrafo 1º del 1,218 del citado Código, para acreditar que
efectivamente en Febrero de mil ochocientos noventa y siete

Doña Joaquina Gago en unión de Morey se introdujeron sin reclamación de nadie como dueños en el predio, ocupándolo, deslindándolo y separándolo con puntos y señales de la hacienda Plazuela de Balseiro y Georgetti.—9? Error de apreciación en la prueba testifical evacuada en la información previa y en el acto del juicio verbal por nuestra parte, porque sin embargo de que toda ella coincide en el hecho fundamental de la mensura y ocupación de Morey, así como en el de la perturbación reciente de Balseiro, confirmando é ilustrando así las certificaciones del agrimensor Sr. Martínez Mora, expedidas en ejercicio de funciones públicas, se le niega el valor complementario de la prueba escrita, en contravención del artículo 1,248 del Código Civil.—10? Infracción del artículo 1,250 del mismo cuerpo legal, porque no se reconoce á favor de Morey la presunción legal de poseedor desde mil ochocientos noventa y siete á mil novecientos por virtud del hecho de haber entrado pacíficamente y sin oposición de nadie en la tenencia de la cosa desde aquella fecha; y 11? Error de hecho en la apreciación de la prueba testifical del demandado que no precisa los actos de posesión de Balseiro y Georgetti desde fecha determinada, limitándose á afirmar, en este punto, simple apreciación de que se ha poseído por Balseiro y Georgetti dos años más ó menos antes de la fecha de las declaraciones y que la siembra de caña de la sociedad agrícola se inició nueve meses antes de esa misma fecha del examen de los testigos, después de la perturbación.—Resultando: Que el recurso fué impugnado en el acto de la vista por la parte recurrida.—Visto: Siendo Ponente el Juez Asociado Don Louis Sulzbacher.—Considerando: Que la Sala sentenciadora, apreciando las pruebas practicadas en el juicio, ha estimado que la sociedad agrícola Balseiro y Georgetti está en posesión de las siete cuerdas, más ó menos, objeto del interdicto y de aquí la deducción de que éstos no inquietaron ó perturbaron á Morey en esa posesión que no tiene, según afirmación del Tribunal

inferior.—Considerando : Que aunque el recurso de casación se funda en el número 7º del artículo 1,690 de la Ley de Enjuiciamiento Civil, ó sea en error en la apreciación de las pruebas, no se precisa si éste es de hecho ó de derecho, como ha debido hacerse, por exigirlo así la índole concreta de la jurisdicción de la Corte Suprema ; pero en el caso de que el error alegado fuera de hecho, no resulta de documentos ó autos auténticos que demuestren la equivocación evidente del juzgador ; pues en el juicio no se ha tenido en cuenta prueba documental, de que los Sres. Balseiro y Georgetti perturbaran á Morey en la posesión de los terrenos á que se refiere ; y en el supuesto de que aquel error fuera de derecho, no se determina la regla de sana crítica infringida, ni la ley ó doctrina legal que la admite, ni el concepto en que se ha cometido la infracción, para dejar así cumplido el artículo 1,718 de la Ley de Enjuiciamiento Civil; por todo lo cual es inadmisible el recurso por los motivos 8º, 9º y 11º—Considerando : Que asimismo son de desestimarse los motivos del 1º al 7º y 10º, porque en todos se parte de un supuesto que no admite comprobado el Tribunal de Arecibo, ó sea, que el terreno, objeto del interdicto, esté poseído en la actualidad por Don Antonio Morey y Rotger, puesto que la sentencia se funda en el hecho contrario, ó sea, que, según la prueba apreciada, los demandados tienen la actual posesión, y son los que deben ser amparados en ella por ahora.—Considerando en su consecuencia : Que no puede admitirse el recurso por los motivos en que se basa.—Fallamos : Que debemos declarar y declaramos no haber lugar á resolver el recurso de casación por infracción de ley interpuesto por Don Antonio Morey y Rotger, á quien condenamos en las costas del recurso ; y líbrese á dicho Tribunal de Distrito de Arecibo la oportuna certificación, acompañada de los autos recibidos á los efectos consiguientes.—Así por esta nuestra sentencia, que se publicará en la *Gaceta,* lo pronunciamos, mandamos y firmamos.

José S. Quiñones.—José C. Hernández.—José M.ª Figueras.
—Louis Sulzbacher.—J. H. McLeary.

Publicación.—Leída y publicada fué la anterior sentencia
por el Sr. Juez Asociado Don Louis Sulzbacher, celebrando
audiencia pública el Tribunal Supremo en el día de hoy, de
que como Secretario certifico, en Puerto Rico á cinco de
Febrero de mil novecientos dos.—E. de J. López Gaztambide,
*Secretario.*